RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE 11/7/06
BY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| KENNETH FRANCIS,<br>Plaintiff | CIVIL ACTION<br>NO. CV03-0307-A |
| VERSUS | |
| BARON KAYLO, et al.,<br>Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Kenneth Francis ("Francis") on February 18, 2003. Francis claims that, while he was incarcerated in the Avoyelles Correctional Center ("ACC") on March 11, 2002, Corrections Officer Charles Dubroc used excessive force against him when he sprayed him with a chemical agent following an altercation between C.O. Dubroc and Francis.[1] For relief, Francis asks for monetary damages.

### Law and Analysis

#### Excessive Force

The pertinent Eight Amendment proscription is only against "punishments" that are "cruel and unusual". Accordingly, "[w]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments

---

[1] Francis' other claims and the other named defendants have been dismissed (Doc. Item 11).

Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." The factors relevant in the inquiry as to whether unnecessary and wanton infliction of pain was used in violation of a prisoner's eighth amendment right to be free from cruel and unusual punishment are:

1. the extent of the injury suffered;

2. the need for the application of force;

3. the relationship between the need and the amount of force used;

4. the threat reasonably perceived by the responsible officials; and

5. any efforts made to temper the severity of a forceful response.

Baldwin v. Stalder, 137 F.3d 836, 838-839 (5th Cir. 1998), citing Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 999 (1992).

It is well settled that the use of mace and other chemical agents, in appropriate quantities, where necessary to restore prison order and security, does not constitute cruel and unusual punishment, even if the inmate is locked in his prison cell or is in handcuffs. Ort v. White, 813 F.2d 318, 324 (11th Cir. 1987); Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984), cert. den., 470 U.S. 1085, 105 S.Ct. 1846, 85 L.Ed.2d 144 (1985). The use of a chemical agent is a reasonable alternative to a physical confrontation between an inmate and prison guards, for compelling compliance from an inmate who cannot be persuaded to obey an order.

See Colon v. Schneider, 899 F.2d 660, 668-669 (7th Cir. 1990). Also, Jones v. Shields, 207 F.3d 491 (8th Cir. 2000).

In Albers v. Whitley, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1084-85, 89 L.Ed.2d 251 (1986), the Supreme Court discussed the use of force during a prison disturbance, as follows:

> "Where a prison security measure is undertaken to resolve a disturbance...that indisputably poses significant risks to the safety of inmates and prison staff...the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on `whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'...`[S]uch factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted' are relevant to that ultimate determination. From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur....But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. When the `ever present potential for violent confrontation and conflagration'...ripens into actual unrest and conflict, the admonition that `a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators'...carries special weight. Prison administrators...should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates....It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a

3

considered choice. Accordingly,...courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives."

The Fifth Circuit has held that the use of mace or tear gas by prison guards to quell a disturbance created by inmates is not the use of unreasonable force and does not constitute cruel and unusual punishment. See Clemmons v. Greggs, 509 F.2d 1338, 1340 (5th Cir. 1975), cert. den., 423 U.S. 946, 96 S.Ct. 360, 46 L.Ed.2d 280 (1975); LeBlanc v. Foti, 487 F.Supp. 272, 275 (E.D. La. 1980), and cases cited therein.

In his original complaint, Francis contends that on March 11, 2002, Officer Dubroc attempted to house Inmate White in Francis' cell (Doc. Item 1). Francis verbally objected to having White as a cell mate, telling Officer Dubroc he and White were "enemies" who had an altercation in the past, that White was "dangerous" because he had recently attempted to kill himself by setting his mattress on fire, and that White was a "psychopath with personality problems" and Francis was "paranoid" of him. Francis further states in his complaint that, when Officer Dubroc told Francis he was not going to tell Dubroc what to do and called Francis a "bitch," Francis retaliated by calling Officer Dubroc a "bitch." Francis states Officer Dubroc then left with Inmate White, but returned a few minutes later with his supervisor, Captain Guillot, and sprayed Francis with a chemical agent. Francis contends the

chemical agent caused a reaction of chest pains, choking, vomiting, headache, dizziness, and burning eyes, face, hands and forearms. Francis contends his disobedience was a "small dispute that was not dangerous to the prison personnel or other inmates" since he was confined in his cell at the time, so the use of a chemical agent was unnecessary and indiscriminate and done with the intent to humiliate Francis (Doc. Item 9). Francis further contends he was justified in resisting Officer Dubroc's "illegal order" in order to protect himself from Inmate White, and that his disobedience had subsided completely by the time Dubroc returned and sprayed him, so the use of a chemical agent was an excessive use of force (Doc. Item 10). Francis also characterizes his disobedience as a "small scale verbal dispute" (Doc. Items 10, 25).

The discovery responses attached to Francis' motion (Doc. Item 25, Ex.) show Officer Dubroc "admits that he sprayed a one second shot of freezing agen[t] into inmate Francis' cell in accordance with Policy #0205-010, entitled "Use of Force" in response to inmate Francis causing a disturbance by threatening his cell mate with physical harm and cursing at Lt. Dubroc." In the disciplinary report dated March 13, 2002 (Doc. Item 25, Ex.), Lt. Dubroc stated that when he notified Francis he would have a cell mate due to the lack of space, Francis began yelling "F--- you bitch, if you put anybody in here I'll f--- them up!" Lt. Dubroc stated that he then gave Francis a direct order to cease the disturbance, which Francis

5

refused to obey; Francis did not stop yelling until Lt. Dubroc sprayed him with the deep freeze agent (Doc. Item 25, Ex.).

The Louisiana Department of Corrections ("DOC") policy provides for use of chemical agents to enforce institutional rules, but the decision must be made by the highest ranking officer present at the time (Doc. Item 25, Ex.). In the case at bar, Lt. Dubroc's supervisor, Capt. Guillot, was present when Lt. Dubroc sprayed the chemical agent.[2]

In his affidavit (Doc. Item 30), Lt. Dubroc states that, on March 11, 2002, he attempted to transfer an inmate to Francis' cell in administrative segregation due to lack of space, at which time Francis began to curse at Lt. Dubroc and threaten harm to anyone place in his cell. Francis refused to obey Lt. Dubroc's direct order to cease, so Lt. Dubroc obtained permission from his supervisor, Capt. Guillot, to use a chemical agent; after a one-second burst of chemical agent into Francis' cell, Francis stopped yelling and cursing, and the infirmary was contacted (Doc. Item 30). The disciplinary report filled out by Lt. Dubroc on March 11, 2002, shows Francis yelled, cussed, threatened to harm anyone placed in the cell with him, refused Lt. Dubroc's direct order to cease the disturbance, and did not comply until a deep freeze agent was used (Doc. Item 45). An "emergency" medical report on March

---

[2] It is noted that the BOP regulations do not create constitutional rights.

11, 2002, shows Francis had been gassed but, on arrival at the infirmary, was ambulatory, did not have shortness of breath, diaphoresis, respiratory distress, or visible signs of trauma or bleeding, and his eyes were read and watery; Francis' eyes were rinsed with a sterile eye wash and he was given an opportunity to shower and change clothes (Doc. Item 45).

Regardless of which version of the dispute is accepted by the court, it is clear from Francis' own admissions in his pleadings that Francis refused a direct order and engaged in a verbal dispute with Lt. Dubroc. The medical record shows Francis was not injured by the spray, and Francis has not alleged any injury other than normal immediate discomfort from contact with the spray.[3] Francis' refusal to obey Lt. Dubroc's orders and his threats of harm to the other inmate created the need for the application of force, the deep freeze agent was a relatively nonviolent alternative to an actual physical conflict between Francis and prison officials to enforce his obedience, and Lt. Dubroc's action in obtaining approval from a superior officer before using the deep freeze agent afforded Francis additional time for compliance with the order as well as ensuring some measure of objectivity in the decision to use the spray.

---

[3] Francis' medical records show he was using Procardia, Isordil, Ecotrin, Hydro-Diuril, and Mavik, and that he carried Nitrostat on him (Doc. Item 45). Francis has not alleged or shown that he suffered any adverse effects from the deep freeze spray due to his medications.

Therefore, the use of a the deep freeze spray was appropriate to enforce Francis' compliance with the orders he was given and was not an excessive use of force. Since Francis' constitutional rights were not violated, Francis' action should be dismissed with prejudice as frivolous pursuant to 42 U.S.C. § 1915.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Francis' action be DISMISSED WITH PREJUDICE AS FRIVOLOUS pursuant to 42 U.S.C. § 1915.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND**

**LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 7th day of November, 2006.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE